**In re WORLDWIDE DIRECT, INC., et al., Debtors.**

**Nos. 99–108 (MFW) to 99–127(MFW).**

United States Bankruptcy Court, D. Delaware.

Oct. 4, 2001.

Bruce Bennett, James O. Johnston, Joshua D. Morse, Hennigan, Bennett & Dorman, Los Angeles, CA, Robert S. Brady, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, for debtors and debtors in possession.

Joseph J. Wielebinski, Joe .E. Marshall, Mina Brees, Munsch Hardt Kopf & Harr, Dallas, TX, Joanne B. Wills, Steven Kortanek, Klehr Harrison Harvey Branzburg & Ellers LLP, Wilmington, DE, for Official Committee of Unsecured Creditors.

John K. Hyvnar, Southborough, MA, for claimant David Collard.

### OPINION[1]

MARY F. WALRATH, Bankruptcy Judge.

This matter is before the Court on the Debtors' objection to the claim of David Collard ("the Claimant"). The Debtors assert that the claim must be subordinated pursuant to section 510(b) because it is based on the breach of an agreement to issue stock to the Claimant. The Claimant asserts that his claim is not based on the contract to issue stock, but is instead based on a prior agreement to pay him a bonus of approximately $700,000. For the following reasons, we sustain the Debtors' objection and subordinate the claim pursuant to section 510(b).

## I. FACTUAL BACKGROUND

The Claimant was employed by one of the Debtors, Worldwide Direct, Inc. ("WWD") between January and June 30, 1998. The Claimant asserted that pursuant to his employment agreement with WWD he was entitled to certain stock options. When WWD began talks with Smartalk Teleservices, Inc. ("Smartalk") about a possible acquisition, the Claimant asserts that WWD and he ultimately agreed that in lieu of the stock options he would receive approximately $700,000 in cash. When Smartalk acquired WWD it agreed to assume the employment agreement with Claimant. Smartalk, however, refused to pay the Claimant. Ultimately,

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is applicable to contested matters pursuant to Rule 9014.

Smartalk and the Claimant executed a written agreement ("the Severance Agreement") dated June 30, 1998.

Pursuant to the Severance Agreement, Smartalk promised to issue to the Claimant 45,000 shares of registered common stock no later than June 30, 1999. (*See* Severance Agreement at § 2(a).) Claimant waived all claims he had against Smartalk and agreed to certain non-compete and confidentiality provisions. (*Id.* at §§ 3, 4 & 5.)

The shares were to be delivered to the Claimant after they were registered. (*Id.* at § 2(b).) After executing the Agreement, Smartalk commenced the process of registering the shares. During that process, however, the Debtors were advised by their independent public accountants that significant accounting issues could require a material restatement of their financial statements. As a result, the shares were never registered or delivered to the Claimant. On January 19, 1999, the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code.

The Claimant timely filed a general unsecured claim in the amount of $700,000 based on his agreement with WWD that was assumed by Smartalk. The Debtors objected to that claim, asserting that it had been released by the Severance Agreement and that the Claimant only had a claim under the Severance Agreement for the Debtors' failure to issue and register stock. Therefore, the Debtors assert that the claim must be subordinated under section 510(b).[2] After a hearing was held on the Objection on April 30, 2001, we allowed the parties to supplement their memoranda of law on these issues.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## III. DISCUSSION

The Claimant raises several defenses to the Debtors' objection to his claim. First, he asserts that the Severance Agreement did not eliminate his right to sue on his underlying claim for payment of the $700,000 because Smartalk never performed under the Severance Agreement. Second, he asserts that section 510(b) is not applicable to his claim, which is for employee's severance pay, not for breach of a contract to buy stock.

### A. Executory Accord

 The Claimant argues that the Severance Agreement is an "executory accord." Because Smartalk never performed its obligations under that Agreement, the Claimant asserts that he is not precluded from raising his underlying claim for $700,000. An executory accord is an agreement under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. *See* Black's Law Dictionary. If the promise is never performed, then the underlying claim is not extinguished. *See, e.g., Bancohio Nat'l Bank v. Abbey Lane, Ltd.,* 13 Ohio App.3d 446, 469 N.E.2d 958 (1984).

 As the *Bancohio* Court explained:

At best, what is alleged by appellant's testimony is an "accord executory," or an agreement for the future discharge of

---

**2.** Alternatively, the Debtors argue that the claim must be reduced to $125,000 under section 502(b)(7) which caps employee claims at one year's worth of salary. The Claimant argues that even under that section he is entitled to $700,000 since that entire amount came due within one year prior to the bankruptcy filing. Since we conclude that the claim is subject to subordination under section 510(b), we need not address this issue.

an existing claim by a substituted performance.... An accord executory is not in itself at once operative as a discharge of a claim unless the agreement itself *specifically* provides therefor....

469 N.E.2d at 960 (citations omitted) (emphasis in original).

■ Where an accord executory is breached, the non-breaching party may sue on the accord executory or may sue for breach of the underlying agreement. *See, e.g., Markowitz & Co. v. Toledo Metropolitan Housing Authority,* 608 F.2d 699, 705 (6th Cir.1979).

The crucial issue is whether the new contract was a substituted contract, meaning that Markowitz's rights, if any, are for breach of the sale agreement; or an executory accord, meaning that Markowitz may either proceed on its rights under the new contract, or treat the second breach as rescission. The plaintiff then reverts to its status which existed prior to the compromise agreement, and has whatever rights and remedies it had at that time.

*Id.*

■ Under Ohio law, the burden of establishing that a new contract discharges the original debt (and is, therefore, a substituted contract) rather than preserving it (that is, an accord executory) rests on the party so asserting. *Id.* For a substituted contract to be found, rather than an accord executory, it must be "clearly and definitively" established that the party intended to relinquish his original rights in exchange for a promise. As explained by the *Bancohio* Court:

[T]here must be a *clear* indication of a creditor's intention to discharge a debt in return for a debtor's *promise* to pay a lesser sum in order to enforce such an agreement. Absent such clear *indicia* of intent, we must hold that only the performance of the requested act, not the mere promise to perform, can discharge the debt.

469 N.E.2d at 961 (emphasis in original).

■ Applying Ohio law to the facts of this case,[3] we conclude that the Severance Agreement did clearly and unequivocally state that it was in substitution for any prior rights that the parties had. Specifically, the Agreement states: "This Agreement sets forth the entire agreement between the parties hereto and fully supersedes any and all prior agreements or understandings between the parties hereto pertaining to the subject matter hereof." (*See* Severance Agreement at § 18(c).) If this were not clear enough, the Agreement further states that:

In exchange for the consideration provided by the Company ... set forth in Section 2 hereof [the promise to issue the new shares]:

(a) Employee does hereby ... release, acquit and forever discharge the Company ... from any and all charges, complaints, claims, liabilities ... including, but by no means limited to, rights arising out of alleged violations of any contracts, express or implied ... from the beginning of time to the date of execution hereof.

(*See* Severance Agreement at § 3.)

This language clearly evinces the intent to create a substituted contract. The Claimant agreed to release, upon execution of the Agreement, any claims he had (including any claim for breach of the alleged contract to pay him $700,000) in exchange for Smartalk's promise to issue stock with-

---

**3.** The Severance Agreement provides that Ohio law controls. (*See* Severance Agreement at § 16.)

in one year, *i.e.*, a promise of future performance. The Severance Agreement did not condition the release on the performance by Smartalk of its promise to issue the stock.

Consequently, we conclude that the Severance Agreement is not an executory accord, but is a substituted contract. Therefore, the Claimant only has a claim for breach of the Severance Agreement, not for any prior agreement.

### B. *Subordination under Section 510(b)*

■ The Debtor asserts that the claim must be subordinated under section 510(b) because it is a claim for damages for breach of the Debtors' agreement to issue stock.

Section 510(b) provides:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b).

The *Nal Financial* case is almost directly on point. *In re Nal Fin. Group, Inc.*, 237 B.R. 225, 230 (Bankr.S.D.Fla.1999). In that case, the claimant brought a claim for damages resulting from the debtor's breach of a registration rights agreement which required the debtor to register securities by a deadline. The *Nal Financial* Court granted summary judgment and subordinated the claim pursuant to section 510(b). 237 B.R. at 232 (citations omitted).

*See also American Broad. Sys. v. Nugent (In re Betacom of Phoenix, Inc.)*, 240 F.3d 823 (9th Cir.2001) (damages for failure to issue stock under contract were subordinated under section 510(b)); *In re International Wireless Communs. Holdings, Inc.*, 257 B.R. 739 (Bankr.D.Del.2001) (same); *In re Granite Partners, L.P.*, 208 B.R. 332 (Bankr.S.D.N.Y.1997) (same).

The instant case is similar. The Claimant's claim is based on the Debtor's breach of a contract which called for the Debtor to issue stock. By the Severance Agreement, the Claimant agreed to accept stock in lieu of any cash payment to which he may have been entitled. He bargained for status as a shareholder, rather than a creditor. Such a claim is properly subordinated under section 510(b).

The Claimant seeks to distinguish his case from the above cases by arguing that he is not seeking rescission of a sale or purchase of a security or damages arising out of a purchase or sale of a security, but is instead seeking damages for unpaid compensation as a former employee of WWD. However, any claim he had for unpaid compensation as a former employee of WWD was waived when he signed the Severance Agreement. In exchange for a claim as a former employee, the Claimant agreed to become a shareholder of Smartalk. He bargained for that status and he cannot now change his mind simply because it was a bad bargain. Therefore, we conclude that the claim must be subordinated pursuant to section 510(b).

### IV. *CONCLUSION*

For the foregoing reasons, we sustain the Debtors' objection to the claim of David Collard and subordinate that claim pursuant to section 510(b).